# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

INDIAN BRAND FARMS, INC.;
COLUMBIA FRUIT FARMS, INC.;
JOYCE CAPPUCCIO, individually and
d/b/a W.M. CAPPUCCIO & SONS;
COLUMBIA CRANBERRY, INC.;
JOSEPH E. MARTINELLI,
individually and d/b/a BLU-JAY
FARMS; GREGORY A. CLARK,
individually and d/b/a CLARK
FARMS; ANTHONY MELORA,
individually and d/b/a MELORA
FARMS; and R & S FRANCESCHINI
FARMS, a partnership of Russell
Franceschini and Scott Franceshini,

        Plaintiffs,

vs.

NOVARTIS CROP PROTECTION, INC.,

        Defendant.

CASE NO. 99-cv-2118 (JHR)

## AFFIDAVIT OF WILLIAM SCIARAPPA

Before the undersigned personally appeared WILLIAM SCIARAPPA, who after being sworn duly deposes and states:

1. Your affiant is William Sciarappa.

2. I presently work in agricultural extension for Rutgers University.

3. In the summer of 1997 I was asked by several blueberry farmers in Hammonton, New Jersey to help document their loss from the Novartis insecticide AG600. I worked in close contact with Neil Lapp of Novartis, and developed a professional working relationship.

4. In 1997 I wrote various reports for blueberry farmers and submitted them to Novartis and Dr. Lapp. Dr. Lapp relied upon the accuracy of them when paying farmers for their crop loss in 1997.

5. In 1997 I compared blueberry yields from several of the farms to ascertain what their extent of loss was in comparison to other unsprayed areas on the same farm or nearby farmers' fields which had not been sprayed with Diazinon.

6. I kept a compilation of my observations of these comparisons that I made during the summer of 1997. The purpose of my compilation was to present this information to growers employing me and then to Novartis so they could better ascertain the extent of the chemical damage to the blueberry plants.

7. In the summer of 1997 I took photographs in the farmers' fields, and photographs of the yield comparison fields I was observing for the farmers.

8. The purpose of taking photographs was not to specifically verify any data, but to generally document the crop damage and demonstrate the different methodologies we used to arrive at our observations which were later written down and turned into table form.

9. The photographs regarding the written yield compilations and comparisons in the summer of 1997 for various farms which had treated and untreated plants were for Novartis, the affected growers, other researchers and my own records.

10. Novartis in the summer and fall of 1997 accepted my written reports and never asked for any other information.

11. In the summer of 1998 I informed Novartis that I would again be preparing a compilation for various blueberry farms in the Hammonton area comparing farms

which had treated and untreated plants.

12. The purpose of my compilations and comparisons for the summer of 1998 was for Novartis and the growers. It was my belief that both groups could use this data to help ascertain the extent of the chemical injury of AG600 to the blueberry farmers' plants in Hammonton.

13. During the course of the summer of 1998 my observations and compilations were summarized in written form and analyzed data formed the basis of the charts and records that I reviewed and testified about in the evidentiary hearing before the Court in February 2012.

14. In the summer of 1998 I took photographs of the various ways we were organizing the material simply as a way to depict to the third person what we were doing. The photographs were not taken to demonstrate the results of the yield comparisons.

15. My purpose in taking the photographs in the summer of 1998 was simply standard procedure to present them to Novartis along with my compilations in the fall of 1998 so that they could better understand the extent of the chemical injury caused by AG600.

16. In the fall of 1998 when Novartis refused to review any of my materials, compilations, photographs or any other work I had done for the farmers for the purpose of comparing the effect on treated and untreated plants, I stored the materials at my home.

17. It was not until my depositions on the 21st day of August, 2001 that my comparisons and compilations for the summer of 1997 and the summer of 1998

were reviewed by me. At a deposition taken by counsel for Novartis the various methodologies I used to compare the treated and untreated plants for the summer of 1997 and 1998 were reviewed.

18. Relative to my files I dealt directly with Novartis counsel. I produced my files and offered to produce any other materials. It became apparent that my files were voluminous, and neither counsel for Plaintiff or Defendant wanted to copy the entire files.

19. After the deposition I received a letter from counsel for Novartis asking me to preserve my files for trial.

20. It was sometime later I learned that Dr. Gerard Krewer in 1999 came to Hammonton, and was presented with a copy of my compilations and comparisons of treated and untreated plants for chemical injury for the summers of 1997 and 1998. Unknown to me Dr. Krewer presented my compilations to Ben Mullinex who did a statistical analysis of my compilations, which provided information to Dr. Krewer.

21. Prior to the hearing of February 2012, relative to the underlying information for the blueberry farmers' assertions regarding continuing plant injury caused by AG600 which was applied in May, June 1997, I was asked to testify.

22. I was instructed by counsel for Plaintiff to bring with me every file, document and every photograph so that at the hearing there would not be an issue about whether or not all of my information was available for the Plaintiff, the Defendant and the Court.

23. I came to Camden with all of that information.

24. My testimony by the Plaintiff focused on the written compilations that I had made based upon observations which were later reduced to writing. There was no discussion or questions regarding photographs.

25. The defense Novartis focused upon my methodology and observations when gathering the information regarding the effects of the AG600 on treated and untreated plants, and asked me to verify the accuracy of the location of the treated and untreated plants in Mrs. Cappuccio's fields. I did so.

26. While I discussed at length with Plaintiff and Defense counsel the numerous hours and kind of work I did relative to arriving at the numerical compilations and comparisons that had been used by the parties, looking back no one asked me about photographs. Had they done so I would have produced them since they were readily available.

27. There was no attempt on my part or anyone's part to restrict anyone's access to the photographs.

28. My photographs of the compilations and comparisons beginning in the summer of 1997 and ending in the summer of 1998 have been available to Novartis since that time

29. It was not until the last several days that counsel for Plaintiffs requested that I provide copies of the photographs that I had taken. They are non-digital. They have been copied by counsel for Plaintiff and apparently sent to counsel for the Defendant.

30. These photographs are demonstrative. They were taken while I was compiling information for the comparisons of treated and untreated plants. They played

no part in the compilation of information.

31. If used by me at trial the photographs would be for the purpose of depicting the steps we took.

32. At the hearing in February we discussed the underlying information that became part of the compilations based simply upon my observations.

33. As I testified I never reached an opinion regarding these compilations. These compilations were later turned over to others who reached conclusions and opinions regarding the adequacy of the factual data that I gathered.

34. At no time have I restricted anyone from reviewing any of my records, photographic or otherwise.

35. Both counsel for Plaintiff and counsel for Defendant would have been welcome at any time at my home since 1997 1998 to review these documents.

36. I have preserved them faithfully as requested by Counsel for Novartis after my deposition in 2001.

FURTHER AFFIANT SAYETH NOT.

Dated this 27 day of September, 2012.

_____
WILLIAM SCIARAPPA

Sworn to and subscribed before me
this 27th day of September, 2012.

_____
Notary Public  Gladys Tarantino

My Commission Expires
April 30th, 2014